RELIABLE MOTOR CO., INC., v. MARYLAND CASUALTY CO.

(February 15, 1932. Opinion and Decree.)

Weiss, Yarrut & Stich; of New Orleans, attorneys for plaintiff, appellant.

Milner & Porteous and P. M. Milner, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. Reliable Motor Car Company, Inc., domiciled in Lake Charles, La., and formerly known as "Nash Sales Company," had in its employ, as a salesman, a Mr. Brown, who, in attempting to sell automobiles, called on J. J. Beeson, who lived at Pitkin, La., some eighty miles or so from Lake Charles. He was unable to make a sale to Beeson, but, discovering that Beeson's automobile needed certain repairs, he prevailed upon either Beeson or his wife to let him take the car to the shop of his employers at Lake Charles in order that the repairs might be made. While he was driving it from Pitkin to Lake Charles a collision took place with a horse which crossed the road and the automobile was somewhat damaged. Brown brought the car to the place of business of his employers and notified Beeson of the accident.

Beeson carried a policy of collision insurance which had been issued by defendant, Maryland Casualty Company, and he therefore notified that company of the damage to his car. An adjuster of the insurance company, who was in Lake Charles, undertook to adjust the claim and, after an investigation authorized the Reliable Motor Company, Inc., to make the repairs, the cost of which amounted to $330.45.

The insurance company now refuses to pay the bill for the said repairs, claiming that, when its adjuster authorized the garage company to do the work, he was not aware of the fact that, at the time of the collision, Brown, who was driving the automobile, was an employee of the garage company and was acting within the scope of his employment as its servant, and further contending that the said adjuster was improperly and fraudulently imposed upon by the said Brown who stated that, at the time of the accident, he had been acting as the agent of Beeson, the owner of the car, instead of disclosing the fact that he was the agent of the garage company.

The insurance company maintains that, had its investigator not been misled in the particular mentioned, and had he known that the driver of the car was an authorized employee of the garage com-

pany, he would not have agreed that his company would pay the bill, because he would have taken the position that the garage company was liable for the damage, since it was caused by the negligence of its employee, Brown, while acting within the scope of his authority.

The garage company asserts that, had it known that there was any doubt as to payment by the insurance company, it would not have made the repairs voluntarily, and it avers that the accident was not caused by the negligence of its employee, but resulted from the defective condition of the car, which condition was unknown to the said employee, Brown, and that, since the accident was caused otherwise than by the negligence of Brown, it would not have been liable therefor, or, at any rate, would have been able on this ground to defend an action against it.

When the adjuster authorized the garage company to make the repairs and agreed that his company would pay therefor, the garage company's officials were justified in assuming that the adjuster had made an investigation satisfactory to him and they were warranted in believing that there was to be no claim against their company, since surely, if there was any reason for the adjuster to feel that the garage company was liable, or that a claim might be made against them, that was the time at which he should have spoken, because that was the time at which the garage company could itself have made a thorough investigation and could have prepared its defense. By agreeing to pay the damage the adjuster lulled the officials of the garage company into a sense of security and, unless it can be shown that the adjuster was imposed upon by some authorized representative of the garage company, it cannot be said that the garage company was

responsible for any error into which the adjuster may have fallen.

When the adjuster received information that the accident had happened, he was told over the telephone by the owner that the automobile was in Lake Charles and he was requested to make the adjustment there. He (the adjuster) does not state that he was informed by any official of the garage company as to the capacity in which Brown was acting in driving the car. He contented himself with obtaining his information from Brown alone, the garage company's employee who had driven the car at the time of the accident. It does not appear that any official of the garage company referred him to Brown or that any official told him that Brown could give him full information. In fact, so far as the testimony of the adjuster shows, and so far as we can ascertain from the copy of his report which, by agreement, we now find in the record, he did nothing except seek out Brown and obtain from him a statement in which he (Brown) said that he was acting as the agent of Beeson. This was a legal conclusion drawn by Brown, and it would have been a very simple matter for Parnell, the adjuster, to have obtained all the facts by discussing the matter with Beeson and with the officials of the garage company. Instead of doing so, however, he limited himself to a discussion of the matter with Brown, an employee, who, so far as the garage company was concerned, had been authorized to drive the car, but certainly was not authorized to draw legal conclusions in matters involving possible legal liability of his employers.

We have no doubt that, in authorizing plaintiff to make the repairs, defendant's adjuster acted on an erroneous conclusion to which he had come as the result of statements made by Brown, but we do not be-

lieve that it can be said that he was imposed upon to such an extent as to prevent plaintiff from recovering for making the repairs. which he (the adjuster) authorized.

His honor below was of the opinion that the defense should prevail, but, in this, we think he was in error.

The amount of the bill was $330.45, but in order to bring the suit in the First city court plaintiff remitted the sum of $30.45, making the total amount of its claim $300.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against defendant in the full sum of $300, with legal interest from judicial demand and for all costs.